UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:19-cv-25114- COOKE/GOODMAN

CHRISTOPHER MOALE,

    Plaintiff,

v.

TONNO LIMITED, a
British Virgin Islands Company, and

JEAN PIGOZZI, an Individual

    Defendants.
_____/

## SWORN DECLARATION OF ARLIX SANTAMARIA

I, Arlix Santamaria, make this Sworn Declaration based upon my own personal knowledge and the business records of Tonno Limited, and attest to the truth of the facts that are stated herein.

1. I am over the age of eighteen years of age and in all respects qualified to make this Sworn Declaration.

2. I have personal knowledge concerning all allegations contained in this Sworn Declaration.

3. At all times material hereto, I am, and was, the President of Tonno Limited, a defendant in the above-captioned action, and I am authorized to make this Sworn Declaration on its behalf.

4. Tonno Limited was formed in August of 1994. Since its formation, Tonno Limited is, and was, a corporation registered in and organized under the laws of the British Virgin Islands.

5. A true and correct copy of Tonno Limited's Certificate of Incumbency is attached hereto as Exhibit "A."

6. Tonno Limited has never been incorporated, licensed, or qualified to conduct business in the state of Florida.

7. Tonno Limited has never had subsidiaries incorporated or qualified to do business in the state of Florida.

8. Tonno Limited has never been incorporated in any other state or territory of the United States.

9. Tonno Limited has never maintained any officers, directors, employees, or agents in the state of Florida.

10. Tonno Limited has never had an office, branch office, or comparable facility in the state of Florida.

11. Tonno Limited has never used, owned, leased, mortgaged, or had any other lien or interest in real, personal, or intangible property in the state of Florida.

12. Tonno Limited has never paid any taxes to the state of Florida or to any other state or territory in the United States.

13. Tonno Limited has never owned any assets in the state of Florida.

14. Tonno Limited has never maintained a telephone number, mailing address, place of business, or bank account in the state of Florida.

15. Tonno Limited has never advertised in the state of Florida.

16. Tonno Limited has never maintained a registered agent in the state of Florida and has never been subject to service of process in Florida. Tonno Limited has never authorized any person or entity to accept service of process on its behalf outside of the British Virgin Islands.

17. Tonno Limited has never engaged in substantial and not isolated activities in the state of Florida.

18. Tonno Limited has never operated, conducted, or engaged in or carried on a business venture in the state of Florida.

19. Tonno Limited has never formed or breached any contract requiring performance in the state of Florida.

20. Tonno Limited is the record owner of the vessel, M/Y "VELCRO FISH" – one 2001 52' Cantieri Marchi motor yacht bearing official number 734892 ("Vessel").

21. The Vessel is registered in the Cayman Islands.

22. At all times material hereto, the Vessel's port of call and base of operation has been in Port Gallice, located in Juan-Les-Pins, France.

23. At all times material hereto, Tonno Limited has never operated the Vessel in the territorial waters of the state of Florida or the United States.

24. At all times material hereto, Tonno Limited has never purchased provisions for the Vessel, including fuel, in the state of Florida.

25. Tonno Limited's business relationship with Christopher Moale arose in and around 2010 in France.

26. Any alleged employment contract between Tonno Limited and Christopher Moale was signed and entered into in France.

27. A true and correct employment contract between Tonno Limited and Christopher Moale is attached hereto as Exhibit "B."

28. Tonno Limited knows of no connection between the incident alleged in the Plaintiff's Complaint and the state of Florida, as the entirety of the events forming the basis of the Complaint took place in the foreign country of France and not Florida.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States and the state of Florida that I have read the foregoing Sworn Declaration and the facts stated therein are true and correct.

Dated April 29th, 2020.

_____
Arlix Santamaria
On behalf of Tonno Limited

EXHIBIT "A"

# TERRITORY OF BRITISH VIRGIN ISLANDS
## THE BVI BUSINESS COMPANIES ACT 2004 (AS AMENDED)

### CERTIFICATE OF INCUMBENCY
### TONNO LTD.

We, **MMG TRUST (BVI) CORP.**, a company incorporated under the laws of the British Virgin Islands and Class 1 Trust License under the Banks and Trust Companies Act, 1990 (as amended) of the said laws, as Registered Agent of **TONNO LTD.**, a company duly incorporated in the British Virgin Islands as an International Business Company under Company Number **125427** on the **8th day of August, 1994**, and automatically re-registered as a BVI Business Company on the 1st day of January, 2007, do hereby certify that:

1. **MMG TRUST (BVI) CORP.** is the Registered Agent and provides Registered Office services for the Company. The Registered Office of the Company is at Morgan & Morgan Building, Pasea Estate, Road Town, Tortola, British Virgin Islands.

2. According to the records available at the Registered Office of the Company, the Company is duly incorporated, validly existing and in good standing under the laws of the British Virgin Islands.

3. The Authorized Capital of the Company is **US$50,000.00** divided into **50,000** shares with a par value of **US$1.00** each.

4. According to the Register of Directors and Officers maintained at the Registered Office of the Company, the following are the duly elected Directors/Officers of the Company:

   | | |
   |---|---|
   | Director/President | **ARLIX ALBERTO SANTAMARIA SAAVEDRA** |
   | Director/Secretary | **KAREN JOANNY SALDAÑA DE GARCIA** |
   | Director/Treasurer | **ERIKA HENID OSES DE LEON** |

5. To the best of our knowledge there are no actions, pending or threatened, against the Company and no resolutions have been passed for its voluntary winding up and no receiver has been appointed over its assets.

Dated this **26th day of December, 2017.**

_____
**MMG TRUST (BVI) CORP.**
REGISTERED AGENT
Albalyra Morales Chandeck
Authorized Signatory

EXHIBIT "B"

MY/ SY                                                                     Crew initials............

## INDIVIDUAL CONTRACT - CREW
**Ref No. in List of Crew:**

| | |
|---|---|
| **Name** Christopher Moale | |
| **Rank** Coxswain | |
| Home Address: 24 Haute Castelet Antibes 06600 | Phone 0493639267 <br> Fax <br> Cell <br> E-Mail Captainkris1@yahoo.com |
| Country of Residence USA | Country of Citizenship USA |
| Date of birth Feb. 27, 1953 | Place of birth Tokyo Japan |
| Date & place of hire Antibes | Crew Agent |
| Date & port of joining Port Galice | Date & port of discharge |
| Passport #: 047138840 | Place of issue Miami Florida |
| Date of issue 24 Aug. 2004 | Expiry date 23 Aug. 2014 |
| Discharge Book | No: |

**Yacht**

| | |
|---|---|
| Name Aqua Drone Velcro Fish | Employing Company Tonno Ltd |

**Managers (for & on behalf of owners)**

Fraser Yachts Worldwide, Yacht Management Division
website: www.fraseryachts.com

*Mark an (X) in the check box for the principal management office*

| ❏ 1800 SE 10th Ave, Suite 400, Fort Lauderdale, FL 33316 USA <br> Phone: + 1 (954) 463 0640 <br> Fax:    + 1 (954) 463 0766 | ❏ Gildo Pastor Center, 7 Rue Du Gabian, MC98000 MONACO <br> Phone: + 377 93 10 04 80 <br> Fax:    + 377 93 10 04 81 |

MY/ SY

Crew initials………

### Emergency Contacts

| 1 – Name: Lynne Beardsley | Relationship: Fiance |
|---|---|
| Address: 24 Haute Castelet Antibes 06600 | Phone (work & home): 0493639267 mobile # 0786199611 |
| 2 – Name: | Relationship: |
| Address: | Phone (work & home): |

### Repatriation

| To | Antibes | France |
|---|---|---|

### Leave

| Rate | Travel |
|---|---|

### Salary

| From (date) | Monthly, in arrears |
|---|---|
| USD 58,300 annually | |

### Banking Information

| Account Name: Lloyds TSB Offshore Limited | Bank Address: Isle of Man P.O. Box 12 Douglas Isle of Man 1M99 1SS |
|---|---|
| Account No: 14733101 | |
| Bank codes: GB91 LOYD 30166314733101 | SWIFT Code: LOYDGB2L |

*MY/SY*                                                                 *Crew initials*..........

## Qualifications

| Certificate of Competency [1]                          | Number & Date of Issue           |
|--------------------------------------------------------|----------------------------------|
| U.S. Coast Guard Masters License                       | 732987 25 August 1993            |
| Certificate of Competency [2]                          |                                  |
|                                                        |                                  |
| Other [3] Commercial Towing Endorsement                |                                  |

Notes:
1.  Here enter the highest Certificate of Competency issued by the Flag State, or the Certificate of Equivalent Competency, and any limitations.
2.  Here enter the certificate of Competency issue by the National Administration, or other, of the Crew Member.
3.  Here enter any other certificates held.

## Medical

| Medical Certificate issued by | Date of issue / expiry |
|-------------------------------|------------------------|
| U.S. Coast Guard              | expired / must update! |

### ZERO TOLERANCE POLICY

The employers have a policy of ZERO TOLERANCE to the use, presence in the body or possession of drugs other than those prescribed by a physician or taken as part of medical treatment, and declared to the Master and/or Employers.

Evidence of non-compliance with this policy will be reported to the relevant authorities of the Port State in which the yacht is and/or to the authorities of the Flag State, should this constitute a criminal act. No smoking is allowed onboard inside the yacht at any time. No smoking is permitted onboard or in the vicinity during bunkers or whilst the yacht is at a bunkers berth. Smoking may otherwise be permitted in designated area(s) and time(s) as per Master's Standing Orders.

The presence of alcohol in the body, which in the Master's opinion impairs, or is likely to impair, the judgement or capability of the crew member whilst on watch, duty or during working hours, will be considered as not complying with this policy.

Blood or other samples may be requested for testing by a competent authority at any time and the crew member agrees to comply with such a request.

MY/SY

4. Responsibility

Crew initials.........

a. The manager(s) may act on the behalf of the employer with regard to the Agreement, including but not limited to representing the employer as a designated signatory. The manager(s) may also be engaged to enforce any of the articles of this Agreement, including but not limited to, engaging / dismissing personnel, verifying information, and accounting.

b. The Captain is the responsible authority onboard.

5. General Provisions

a. The jurisdiction of this contract is that of the Flag State of the yacht.

b. Where the account or account name in 'Banking Information' is other than the personal account of the crew member, the crew member warrants that this is their express instruction and indemnifies the employer(s), the yacht or its owners, their agents and/or manager(s) against any and all liability arising from their instruction.

c. Any modification or alteration to the crew's information contained herein will be notified promptly to the managers. Usually, one (1) month's notice is required prior to any change in bank transfer information and repeated alteration will not be considered acceptable.

Signed

Crew member

[signature]

Employer or representative thereof

...................................................

Date

Oct-13, 2010

Place

...................................................

CONTROLLED DOCUMENT     CREW AGREEMENT     FRASER YACHTS

## CONTRACTUAL CLAUSES

THIS AGREEMENT is made between *(here insert the name and address of the owning company)* Tonno Ltd, New York, USA & Capt. Chris Moale ................ *(herein called 'the employer')* and each of the seamen *(herein called a 'crew member')* whose name is included in the list of crew incorporated in this Agreement.

IT IS AGREED THAT

1) The employer will employ each crew member and the crew member will serve in the capacity and at the rate of wages expressed in their individual crew contract.

2) This Agreement shall be for a voyage or voyages or time spent in port or in a shipyard or other place within the limits of Unlimited ................ *(geographical limits to be stated, e.g "unlimited", "Mediterranean (Gibraltar to Suez)", "North & South Atlantic (Gibraltar to Panama Canal)", "Panama Canal to Suez through Pacific and Indian Ocean")* but not, in any case, above 66.5° N (Arctic Circle) or below 66.5° S (Antarctic Circle) ~~for a period not to extend beyond the ................ (he re-state the date of termination not more than 12 months hence)~~ or the time at which the yacht first arrives at the port of final destination *(country to be stated)* ................ after that period.

3) Either the crewmember or the employer may give to the other notice (in writing) to terminate the crewmember's employment under this Agreement at an agreed port, such notice to be given <u>one calendar month</u> <u>before the date of termination</u>.

4) In relation to an individual crew member this Agreement may be terminated:
   a) By mutual consent;
   b) If medical evidence indicates that a crew member is incapable of continuing to perform his duties by reason of illness or injury;
   c) By appropriate notice in accordance with the provisions of this Agreement;
   d) If a crew member having been notified at least 24 hours previously of the time the yacht is due to sail, is absent without leave at the time fixed for sailing and the yacht proceeds to sea without them or if substitutes have been engaged. Substitutes shall not, however, be engaged on a Crew Agreement more than two hours before the time fixed for sailing;
   e) If, in the opinion of the master, the continued employment of the seaman would be likely to endanger the yacht or any person on board;
   f) If the master is satisfied that an appropriate breach, by that crew member, of the Code of Conduct for the Merchant Navy for the time being in force has occurred;
   g) If the master is satisfied that a crew member has breached the employer's Zero Tolerance Policy by possession, use or presence in a blood or other

sample, of illegal drugs, non-prescribed controlled drugs or other illegal substances on board the yacht or during the term of employment;

h) If the master is satisfied that a crew member has breached the terms of this Agreement relating to conflict of interest or confidentiality.

5) The employer agrees that if a crew member shows to the satisfaction of the master or the employer that he can obtain the command of a vessel or an appointment as mate or engineer or to any post of higher grade than they actually hold, or that any other circumstance has arisen since their engagement which renders it essential to their interests that they should be permitted to take their discharge, they may claim their discharge provided that without increased expense to the employer and to the satisfaction of the employer or his agent he furnishes a competent and reliable person in their place. In such case the crew member shall be entitled to their wages up to the time of leaving their employment;

6) This Agreement will terminate immediately on the date of sale, loss or disposal otherwise of the yacht and each crew member will be paid one month's salary in lieu of the notice required to be given under clause 3).

7) Each crew member agrees:
   a) To join the yacht by the time specified by the master and subsequently during the period of their employment to rejoin the yacht by the time specified by the master;
   b) To take all steps within their power to preserve in good condition the equipment of the yacht and all property onboard;
   c) To return in good condition (fair wear and tear excepted) before the termination of their engagement all articles provided for their use during the voyage by the employer;
   d) To comply with the Code of Conduct for the Merchant Navy for the time being in force, a copy of which is available for inspection by each crew member; and
   e) To abide by the owner's Zero Tolerance Policy regarding the possession or use of illegal drugs, non-prescribed controlled drugs or other illegal substances.

8) SALARY
   a) The annual salary due to a crew member, as specified in their individual contract, will be paid in 12 equal instalments, or pro rata in cases where the crew member has not worked a complete month, and will be paid monthly in arrears, in the agreed currency, via a bank deposit (a direct transfer or cheque), in cash or as shall otherwise be agreed between the crew member and the employer. Any bank transfer fees will be prepaid by the employer(s) but they will not be liable for any fees charged by the crewmember's bank upon receipt of the salary.
   b) The employer may deduct from the salary due to a crew member any amount payable by the crew member in respect of canteen goods, goods supplied, radio or telephone calls, postage expenses, cash advances or allotments.

(CFM)

CONTROLLED DOCUMENT　　　　CREW AGREEMENT　　　　FRASER YACHTS

c) The crewmember will be liable for all applicable taxes, government fees, social security payments or other obligations arising from their citizenship or country of residence.

d) Payment will not accrue for any hours during which a crewmember refuses or neglects to work when required or is absent without leave or for any period during which a crew member is incapable of performing their duties by reason of illness or injury which has been caused by their own wilful act or default.

e) The employer may deduct an amount, not exceeding GBP 100, being the actual expense or pecuniary loss incurred or sustained by the employer in consequence of the crew member's absence or absences without leave where the employer is satisfied on reasonable grounds that such absence is a breach of the crew member's obligations under the Agreement or an amount not exceeding GBP 300, where the employer is satisfied on reasonable grounds that such expenses or losses were caused by a breach of the crew member's obligations under the Agreement, other than absence without leave. No deduction in respect of a crew member's absence without leave shall however be made where the crew member satisfies the master that the absence was due to an accident or mistake or some other cause beyond their control and that they took all reasonable precautions to avoid being absent.

9) LEAVE

a) The maximum period that a crew member may be required to remain on board between leave periods will be eleven months;

b) Leave will be at the rate agreed in the crew member's individual contract but will not, an any case, be less than one month per eleven months service per year;

c) No leave will be earned during the first three months on board the yacht. Thereafter leave is earned pro rata to the time on board;

d) Leave may not be carried forward from one year under contract to the next; and

e) Payment in lieu of untaken leave will be made only upon termination of employment.

10) CONFLICT OF INTEREST

a) No crew member may directly or indirectly solicit or accept personal fees, commissions, gifts or gratuities, in connection with the yacht and its operation, from the owner(s), guests, suppliers, or anyone with whom business is conducted for the yacht;

b) The only gratuities that may be accepted are those voluntarily given by guests, which must be distributed equally among all crewmembers on board during the voyage to which the gratuity relates.

11) CONFIDENTIALITY

a) Each crew member hereby acknowledges that they will, or may, be acquiring, making use of and adding to confidential and proprietary information which is not generally known

CONTROLLED DOCUMENT — CREW AGREEMENT — FRASER YACHTS

and which is of special and unique nature affecting, and relating to the owner, guests, the yacht and its operation (herein called "confidential information")

b) Each crew member agrees that they will use the confidential information only for the benefit of the owner/guests and shall not at any time whilst employed under this Agreement, directly or indirectly, divulge, reveal or communicate any confidential information to any person, company, corporation or entity whatsoever.

c) No crew member shall, however, be under any obligation in respect of the confidential information which:

   i) Has become generally known through no fault of their own;

   ii) Was known legally through an independent source;

   iii) Was known prior to the time such information was disclosed to the crew member;

   iv) Relates to the yachting industry generally, provided identities are not disclosed; or

   v) Is required to be disclosed by law or by a court of competent jurisdiction.

12) REPATRIATION AND TRAVEL

a) The employer will arrange suitable travel, accommodation and subsistence from the place of engagement to the yacht, or shall authorise the crew member to make such arrangements, subject to prior approval of costs or instruction, which will be reimbursed.

b) Where, for whatever reason, the crewmember's employment has been terminated, or the crewmember has been left behind, the employer will arrange repatriation in accordance with the statutory rights of the crewmember. Such repatriation will be at the employers expense except that where such repatriation arise from the crew member's breach of their obligations under this Agreement when the appropriate amount specified in clause 8)e) of this Agreement may be deducted from the crew member's salary.

13) HEALTH INSURANCE

Private health insurance may be provided by the employer in addition to the statutory insurance, at no cost to the crew member. The terms and conditions of this additional insurance shall be at the discretion of the employer who may, at any time, change or cancel it. Any such change or cancellation shall not require the consent of the crewmember or prior consultation with them.

Signature of employer, master or any other person authorised by the employer.

.......(signature) (Captain)........

Place... Antibes, France 066

(Date recieved contract from Fraser Yacht)

(CFM signature)