UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-cv-25114-MGC

CHRISTOPHER MOALE,

    Plaintiff,

v.

TONNO LIMITED, a British Virgin Islands
Company, with Offices in New York and
JEAN PIGOZZI, an Individual

    Defendants.
_____/

## RESPONSE TO DEFENDANT TONNO LTD'S MOTION TO DISMISS THE COMPLAINT

Plaintiff, CHRISTOPHER MOALE ("Moale"), by and through undersigned counsel hereby files his Response to Defendant Tonno LTD ("Tonno") Motion to Dismiss the Complaint as follows:

### I. INTRODUCTION

Plaintiff argues that the Court has either specific or general personal jurisdiction over the Defendant Tonno. Plaintiff has alleged that Tonno committed a tort by willfully, wantonly and persistently disregarding Tonno's clear obligation to pay wages and maintenance and cure obligations to Moale. It is undisputed that when Moale arrived in Florida, Tonno improperly fired Moale and willfully and wantonly stopped paying Moale his wages and the benefits due to him under the well-established maintenance and cure doctrine. Tonno and its agents had a duty to duly investigate and pay Captain Moale for his wages earned during his service on Tonno's vessel and, in connection with personal injuries

suffered and benefits due to him under the maintenance and cure doctrine. However, not only did Tonno fail to meet their legal obligations to Captain Moale, they did so after being given direct access to Moale where he resides in Florida, where he was receiving his medical treatments and where his medical records are located. It is clear that Tonno failed to act to provide for Captain Moale's wages and that Tonno never provided Captain Moale with his benefits under the maintenance and cure, all due to him in Florida. Furthermore, Plaintiff alleged Tonno either directly or through its Managers Fraser Yachts of Ft. Lauderdale, Florida, entered into numerous contracts in Florida, including but not limited to, a contract to insure the very vessel involved in this situation. The insurance contract between Tonno and Chubb Insurance was entered into in Florida. Moreover, Tonno hired Fraser Yachts as the vessel management agent in Florida. Finally, all of the relevant employment and vessel records are most likely kept with Fraser Yachts in Florida.

The Court also has subject matter jurisdiction over Tonno through either diversity or admiralty jurisdiction. Moale is both a resident and a citizen of Florida. His passport was issued in Florida. His permanent address is in Florida and he has no intention of leaving Florida and if needed, Plaintiff will amend the Complaint to clarify the wording of its diversity jurisdiction allegation. Finally, the Court also has admiralty jurisdiction, as Moale, a seaman, is a ward of the court. It has long been held that admiralty courts will take jurisdiction over a seaman's claims against a vessel "prevent and ameliorate cruelty and injustice" to protect a seaman, even if it was a foreign seaman, on a foreign flagged vessel with a foreign employment contract. *The August Belmont*, 153 F. 639, 641 (S.D. Ga. 1907). In this case, the seaman in question is an American citizen and Master licensed by the

United States of America, which gives this Court more reason to protect him against Tonno's acts of cruelty and injustice towards Moale.

## II.  FACTS

1. Plaintiff is a US citizen and a permanent resident of Florida and thus a citizen of Florida for diversity purposes.

2. Plaintiff was an American seaman employed by Tonno at the time of the incident. Plaintiff's country of residence was the USA and had an American passport issued in Miami, Florida. In addition, Plaintiff used a Master's license issued by the US Coast Guard to captain the vessels. *See* **Exhibit A** – Employment Contract, at 1.

3. Plaintiff's employer on the contract was Tonno LTD, based out of New York, USA. *Id.* at 5.

4. On October 22, 2018, Plaintiff was injured aboard the M/Y Velcro Fish ("Vessel"). [DE 1].

5. Tonno hired Fraser Yachts, a Florida corporation located at 1800 SE 10th Ave, Suite 400, Ft. Lauderdale, Florida, as its agent to manage the Vessel and the employment of the Plaintiff with Tonno. *See* **Exhibit A**, at 1; *see* **Exhibit H**.

6. Tonno entered into an insurance contract with Chubb in the USA to insure the Vessel with insurance policy number Y08713911.

7. On November 09, 2018, Captain Moale arrived in Florida after the incident and simultaneously stopped receiving wage payments from Tonno. *See* **Exhibit A**;

8. Plaintiff contacted Tonno and its insurance shortly afterwards and informed them of his injuries. *See Id.* Dr. Rudnick diagnosed Plaintiff with multiple shoulder and hip

injuries and after only $15,000 of payments for medical treatment, Tonno and its insurance stopped all payments. *See Id.*

9. Plaintiff made demands regarding the non-payment of wages, maintenance and cure to Defendant's insurance representative in the US. *See* **Exhibit B** – Email to Chubb.

10. Plaintiff repeatedly made his demands for wages and maintenance and cure throughout 2018 and 2019 and eventually Plaintiff was contacted by Defendant's attorney's in response to the demands. *See* **Exhibit C** – Email from Davant to Plaintiff; *see* **Exhibit D** – Davant letter to Plaintiff.

11. On October 22, 2019, Plaintiff's counsel permitted Tonno and its counsel to communicate directly with Captain Moale in order to negotiate a maintenance rate and cure payments. *See* **Exhibit E** – Email allowing Davant to speak to Plaintiff directly.

12. Captain Moale provided Tonno and its counsel with his medical records to show the extent of his injuries. On November 27, 2019 Tonno's counsel based in Ft. Lauderdale, Florida confirmed that they had received Dr. Baker's medical records regarding the Plaintiff's injuries and forwarded them to Plaintiff's counsel. All of this took place before the lawsuit was filed. *See* **Exhibit F** – Email from Davant confirming receiving Plaintiff's medical records.

13. Plaintiff awaited Tonno's payments of maintenance and cure based on the records provided, however Plaintiff was greeted only with silence from the Defendants.

14. On December 11, 2019, Plaintiff filed the Complaint against the Defendants alleging failure to pay wages, maintenance & cure and negligence per se. [DE 1].

15. To date, Defendants have not paid the Plaintiff his wages, maintenance and cure.

### III.  MEMORANDUM OF LAW

#### a.  Standard of Review and Applicable Law

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When determining whether the complaint is plausible, the "complaint must be construed in the light most favorable to the plaintiff and the factual allegations taken as true." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

This Court has specific personal jurisdiction over Tonno because while Tonno committed a "tortious acts outside the state", the injury itself was caused in Florida thus giving rise to specific personal jurisdiction under Fla. Stat. § 48.193 (1)(a)(2)[1]. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217 (11th Cir. 1999); *see also Colindres v. Port City S.S. Servs.*, No. 10-23321-Civ, 2011 U.S. Dist. LEXIS 44102, at *5 (S.D. Fla. Apr. 15, 2011).

#### b.  Plaintiff has properly alleged personal jurisdiction against Tonno

##### 1.  The Court has Specific Jurisdiction over Tonno

Plaintiff alleged specific personal jurisdiction under Fla. Stat. § 48.193 because Tonno committed a tort of failing to pay wages, maintenance and cure in Florida. [DE 1] at 6. Under the law, there are two types of maintenance and cure, a tort and a contract type. *See Blige v. M/V Geechee Girl (in Re Casey)*, 180 F. Supp. 2d 1349, 1354 (S.D. Ga. 2001)

---

[1] Fla. Stat. § 48.193 (1)(a)(2) will be referred to as Fla. Stat. § 48.193 (1)(b) in older case law such as *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217 (11th Cir. 1999) as the statute has been re-written and its subparts reorganized.

(quoting *Guevara v. Mar. Overseas Corp.*, 59 F.3d 1496, 1511-12 (5th Cir. 1995)[2]). The tort type of maintenance & cure, as alleged by the Plaintiff "involves a personal injury; i.e., typically a worsening of the seaman's physical or mental health caused by the failure to provide maintenance or, more likely, cure". *Id.* Plaintiff's allegations clearly fall in the "tort-like" type of maintenance and cure because Tonno's willful, arbitrary, capricious actions to not pay Plaintiff his maintenance and cure have worsened his injuries and his health. *See* [DE 1]. Due to not receiving wages, maintenance and cure Plaintiff's treatment was delayed which led to further deterioration in both his physical and mental condition as what could have been treated with simple treatment has now led to multiple surgeries on his hips and shoulders. *See* [DE 1]; *see also* **Exhibit G** – Operation Records.

    Since Tonno's actions caused injury to the Plaintiff in Florida by worsening his physical and mental condition, even though the original tortious action occurred outside of Florida, personal jurisdiction exists on Tonno in Florida. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217 (11th Cir. 1999) (finding that Fla. Stat. § 48.193 applies to grant personal jurisdiction over "defendants committing tortious acts outside the state that cause injury in Florida"). Defendant's cited cases are irrelevant to this case because *Tarasewicz v. Royal Caribbean Cruises Ltd.*, Case No. 14-CIV-60885, 2015 WL 3970546, at *6 (S.D. Fla. June 30, 2015) and the other cited cases were conducting a simple *forum non conveniens choice of law analysis* rather than a specific personal jurisdiction analysis under Fla. Stat. § 48.193. The question for Fla. Stat. § 48.193 is not where the wrongful act occurred, but rather where the injury occurred under *Posner* and thus case law regarding which law to apply is inapplicable

---

[2] *Guevara* Court's other holding that punitive damages cannot be awarded in maintenance & cure actions was overruled by the Supreme Court in *Atl. Sounding Co. v. Townsend*, 557 U.S. 404 (2009).

to a jurisdictional analysis. *See* 178 F.3d at 1217. *Posner* instructs that the Court does have personal jurisdiction over the Defendants because they caused injury to the Plaintiff in Florida by failing to pay wages, maintenance and cure which worsened the Plaintiff's condition. *See Id.*; *see* **Exhibit G**.

### 2. In the alternative, General Personal Jurisdiction exists over Tonno

In the alternative, the Court has general personal jurisdiction over Tonno as they entered into a contract in Florida to hire Fraser Yachts, a Floridian corporation, as the vessel manager who also drafted Plaintiff's employment contract. *See* **Exhibit A;** *see also* **Exhibit H** – Fraser Yachts SunBiz Records. This directly contradicts Defendant's statements that Tonno does not conduct any business in Florida, when clearly on the Plaintiff's employment contract, it states Fraser Yachts as the manager with a Florida address. Furthermore, Plaintiff alleges that Defendant has entered into an insurance contract with Chubb to insure the yacht, insurance policy number Y08713911. Hiring a Florida based yacht manager, drafting the contract and entering into insurance contracts to insure the yacht in Florida does qualify as "substantial and not isolated" activity in Florida under Fla. Stat. § 48.193(2).

### 3. Conferring Personal Jurisdiction over Tonno comports with the Due Process Clause of the Fourteenth Amendment

In the Eleventh Circuit, for "specific jurisdiction cases, courts apply a three-part test for minimum contacts, "which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the non-resident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether

the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Duncanson v. Wine & Canvas Dev., LLC*, No. 6:14-cv-704-Orl-40KRS, 2015 U.S. Dist. LEXIS 183785, at *34 (M.D. Fla. June 24, 2015) (*quoting Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)). Furthermore, Plaintiff bears the burden of proving "the first two prongs, and if the plaintiff does so, 'a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Id.* (citing *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1355).

As explained above, Plaintiff's claim is that Tonno willfully and wantonly failed to pay for his wages, maintenance and cure which led to increased and worsened injuries in Florida. Thus, the Defendant's contacts in Florida was the Defendant's failure to pay which later caused Plaintiff's injuries within Florida. *See Posner*, 178 F.3d at 1217. The first prong is also satisfied through Tonno's use of its agent, Fraser Yachts, in Florida. *See Duncanson*, 2015 U.S. Dist. LEXIS 183785, at *34 (holding the prongs are satisfied through the agent's activities in Florida and because the acts occurred in Florida). The Defendant also has other contacts in Florida, such as hiring Fraser Yachts in Florida to act as the yacht manager, having Fraser Yachts create and maintain Plaintiff's employment contract and contracting with Chubb to insure the vessel in the USA. The second prong is also satisfied because the act that occurred in Florida was the Plaintiff's worsening injury by Tonno's failure to pay wages, maintenance and cure. In addition, through Tonno's contracts, with Fraser Yachts as the manager and with Chubb as the insurer, the Defendant purposefully availed itself of the privilege of conducting business in Florida and thus invoked the benefit of Florida's laws. Florida is one of the world's most preeminent forum for maritime activities in the world and is home to the highly reputable yacht brokers and management companies, such

as Fraser Yachts. Tonno made a purposeful decision in hiring Fraser Yachts in Florida to manage the vessel on its behalf due to both the corporation and the forum's maritime reputation.

Finally, the Defendant has not proven why exercising jurisdiction would offend notions of "fair play and substantial justice" and thus Plaintiff carries its burden and has proven personal jurisdiction. Tonno is a corporation, not an individual so they can appoint corporate representatives in Florida, perhaps Fraser Yachts as its yacht manager, to minimize any 'travel' concerns. Furthermore, it is highly likely that most of the relevant records and documents are stored with Fraser Yachts headquarters in Florida as Fraser Yachts is the manager and handles most of the day-to-day activities as related to the Vessel. Furthermore, Plaintiff's medical treatment, records, and physicians are all in Florida and would be highly burdened to travel to another forum for this litigation.

### c. Plaintiff properly alleged Subject Matter Jurisdiction against Tonno

The Court also has subject matter jurisdiction over the Defendant based on diversity jurisdiction or, alternatively, admiralty jurisdiction.

#### 1. SMJ under Diversity Jurisdiction exists against Tonno

Plaintiff is a citizen of Florida. Plaintiff's permanent place of residence is Florida, he has not changed his residency and does not intend to change it, and thus he is domiciled in Florida. *See McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002); *see also* **Exhibit A**. While it may have been improper wording, Plaintiff can amend the Complaint to allege properly Plaintiff's citizenship in Florida.

#### 2. In the alternative, SMJ under Admiralty Jurisdiction exists against Tonno

The Court can also apply admiralty jurisdiction to this case in its discretion in order to prevent injustice and cruelty to the Plaintiff, a US citizen. *See* **Exhibit A**. Seamen, such as the Plaintiff are wards of the Court and are deserving of *special* considerations and protections against the employers, such as the Defendant. *See U. S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 355 (1971) ("Seamen from the start were wards of admiralty"); *see also Karim v. Finch Shipping Co.*, 374 F.3d 302, 310 (5th Cir. 2004). It has been a principle of admiralty courts for centuries that even when all of the parties, the vessel, and the subject matter is foreign, the "the courts of the United States constantly exercise their authority to prevent and ameliorate cruelty and injustice". *The August Belmont*, 153 F. 639, 641 (S.D. Ga. 1907). The Court analyzed similar cases such as the *Wilson v. The John Ritson* (D.C.) 35 Fed. 664 which held "[w]e have a case of a controversy between master and seaman of a foreign vessel, under a foreign flag, growing out of a contract made in their own country. There can be no question that, in the absence of treaty regulations to the contrary, this court has jurisdiction of the question". *See Id. (quoting Wilson v. The John Ritson* (D.C.) 35 Fed. 664). Furthermore, American Courts sitting in admiralty have regularly accepted jurisdiction over foreign admiralty cases, such as in *Lauritzen v. Larsen* where the Court took jurisdiction over a lawsuit by a Danish seaman against a Danish vessel owner, on a Danish flagged ship with a contract based on Danish law while the seaman was injured in Havana, Cuba. 345 U.S. 571, 573 (1953). In *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306 (1970), the Court also took jurisdiction where the Plaintiff, a Greek citizen was employed on a Greek vessel, owned by a Greek corporation and his employment contract also was under Greek law and signed in Greece. The Court held that because the injury occurred in the USA and because the Plaintiff was a lawful permanent resident of the US, the Court had jurisdiction. *See Id.* at

310. Similarly, Plaintiff Moale argues that his *injury occurred in Florida* even though Tonno's act may have occurred outside of Florida. *See Posner*, 178 F.3d at 1217.

*The August Belmont* also exercised jurisdiction where an US citizen seaman sued a foreign-flagged ship with a foreign owner where the incident occurred in Germany for wrongfully terminating him and wrongfully withholding his wages. *See The August Belmont,* 153 F. at 641. The contract was also signed outside of the US in front of foreign witnesses. The Court still exercised jurisdiction and granted relief to the plaintiff for his wrongfully withheld wages. The situation facing Captain Moale is the same as *Lauritzen*, *Rhoditis* and *The August Belmont*. *See Lauritzen* 345 U.S. at 573; *Rhoditis*, 398 U.S. at 310; *see The August Belmont*, 153 F. at 641. Plaintiff Moale, an American citizen, living in Florida, signed a seaman's contract in a foreign country with a foreign vessel and its foreign owner, however as in *The August Belmont*, the Court can exercise admiralty jurisdiction in order to "ameliorate cruelty and injustice" to the Plaintiff. Tonno's wrongful termination and withholding of wages clearly rises to the level of cruelty and injustice towards the Plaintiff as anticipated by the Court in *The August Belmont*. *See Id.* at 641. In addition, a Florida corporation, Fraser Yachts wrote the Plaintiff's contract for his employment with Defendant Tonno that gives even more contacts to Florida than what existed in *The August Belmont*. *See Id.*

    d.  **Venue is proper over the Tonno**

Venue is proper under 28 U.S.C. §1391(b)(2) because the "substantial part of the events or omissions giving rise to the claim occurred" in Florida based on Tonno's failure to pay wages, maintenance and cure which caused, increased and worsened the Plaintiff's injuries in Florida. In the alternative, venue arises under 28 U.S.C. §1391(b)(3) because this

Court has personal jurisdiction over Tonno as described above. Under binding Eleventh Circuit case law, personal jurisdiction exists in Florida even when the Defendant commits "tortious acts outside the state" but the injury is caused in Florida. *Posner*, 178 F.3d at 1217. Plaintiff alleges that the injury to Plaintiff was caused in Florida due to his worsening medical condition from a failure to pay wages, maintenance and cure which gives rise to the tort-like maintenance and cure action against the Defendant. *See Blige*, 180 F. Supp. 2d at 1354.

> e. **Dismissal for Forum Non Conveniens is improper and American Maritime substantive law should apply**

Admiralty jurisdiction clearly applies as described above and thus the only question for the Court is whether US maritime law or a foreign law should apply. As the Defendant admits, when admiralty jurisdiction applies, it is improper for the Court to dismiss the case and the Court should rather retain jurisdiction and apply whichever substantive law is proper. *Smith v. Carnival Corp.*, 584 F.Supp.2d 1343, 1348 (S.D.Fla.2008); *Belik v. Carlson Travel Group, Inc.*, 26 F.Supp.3d 1267, 1274 (S.D.Fla.2013) (citing *Szumlicz*, 698 F.2d at 1195 ("[I]f United States law is applicable, the American court should retain jurisdiction rather than relegate the controversy to a foreign tribunal.")

Plaintiff argues that US maritime law should apply substantively under the *Lauritzen* and *Rhoditis* analysis. *Lauritzen v. Larsen*, 345 U.S. 571, 573 (1953); *see Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 307 (1970). The place of the wrongful act, the Plaintiff's citizenship and place of the contract, and law of the forum and ship owners base of operations can arguably point to US law applying. The analysis of the eight factors however is not a mechanical one and one of the factors might satisfy the analysis for the Court as it may have

more weight than the other factors. *See Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 308 (1970) ("The *Lauritzen* test, however, is not a mechanical one"). Furthermore, the Defendant does not seem to point to a single alternative forum in which they would accept jurisdiction, but rather just multiple other jurisdictions possibly exist, such as France, The British Virgin Islands, Cayman Islands. There is nothing stopping the Defendant from arguing in those forums that the case should also be dismissed since another alternative and/or adequate forum exists in order to keep avoiding their substantive duty of paying wages, maintenance & cure to the Plaintiff.

1. **Place of the wrongful act;**

While the physical location of the wrongful act was in France, where Plaintiff fell on the ship due to its unseaworthy condition, this factor should have little to no bearing on the decision of which country's law to apply in this Court. *Lauritzen* stated that "[t]he test of location of the wrongful act or omission, however sufficient for torts ashore, is of limited application to shipboard torts, because of the varieties of legal authority over waters she may navigate. *Lauritzen*, 345 U.S. at 583. If however, the Court holds that the place of the wrongful act was Florida due to the allegation that the tort-like claim against Tonno for failure to pay maintenance and cure worsened and aggravated Plaintiff's injuries, then this factor points to the application of US law. *See Posner*, 178 F.3d at 1217; *see Blige*, 180 F. Supp. 2d at 1354.

2. **Law of the flag;**

The flag of the Vessel is the Cayman Islands, well know so-called flag of convenience. While the *Lauritzen* Court did give significant weight to it, in the context of the instant case, it makes very little sense to apply Cayman Islands law to this case when this is

the only factor for the application of Cayman Islands law. *Lauritzen*, 345 U.S. at 584-86. In *Lauritzen*, other factors connected the case to Denmark, on top of the law of the flag which convinced the Court to hold that Danish law should have applied. *See Id*. Compared to *Schexnider*, it was a combination of the law of the flag, where the vessel was manufactured and the management of the day-to-day operations that overrode the citizenship factor of the seaman. *Schexnider v. McDermott Int'l*, 817 F.2d 1159, 1162 (5th Cir. 1987). However, in this case it is simply the law of the flag versus the citizenship of the Plaintiff and based on the cases analyzed by the Supreme Court, Plaintiff citizenship should take precedence. *See Lauritzen*, 345 U.S. at 584-86.

### 3. Allegiance or domicile of the injured;

The tension between the second and third factor is very apparent in this case as the flag is under the Cayman Islands, however the injured is a US Citizen who resides in Florida. *See* **Exhibit A**. The Court recognized that the country of the injured seaman has a "legitimate interest that its nationals and permanent inhabitants be not maimed or disabled from self-support". *Lauritzen*, 345 U.S. at 586. American courts adopted this overriding concern and held that US law applies simply based on the "fact that the wrongful act or omission alleged caused injury to an American citizen". *Id.* While *Lauritzen* did not have to analyze this issue, as the seaman was Danish, other American courts did analyze the issue and held that US law should protect US Citizens. *See Uravic v. F. Jarka Co.*, 282 U.S. 234, 237 (1931) (Applying US law for a US citizen versus German flag); *Shorter v. Bermuda & W. Indies S.S. Co.*, 57 F.2d 313 (S.D.N.Y. 1932) (Applying US law for a US citizen versus Bermuda flag); *Gambera v. Bergoty*, 132 F.2d 414, 415 (2d Cir. 1942) (Applying US law for a Naturalized immigrant versus Greek flag); *The Oriskany*, 3 F. Supp. 805, 806 (D. Md. 1933)

(Applying US law for a US citizen versus a British flag); *Clark v. Montezuma Transp. Co.*, 217 A.D. 172, 173 (App. Div. 1926) (Applying US law for a US citizen versus British flag); *see also Symonette Shipyards, Ltd. v. Clark*, 365 F.2d 464, 467 (5th Cir. 1966)[3] ("We are of the opinion that the citizenship of the seamen and the factors surrounding their employment are sufficient to justify applying the law of the United States.").

Plaintiff argues that the same principle should be applied because in addition to his US citizenship, as a seaman, Plaintiff is a ward of the court and must be protected against the ship owner's abuses. *See U. S. Bulk Carriers, Inc.*, 400 U.S. at 355; *see Rhoditis*, 398 U.S. at 308.

### 4. Allegiance of defendant ship owner

*Lauritzen* held that this factor is of very little importance because with modern developments, the corporate owners are mostly different from the flag of the vessel and so corporate formalities should be ignored in most cases. *Lauritzen*, 345 U.S. at 587-88. This same principle applies to Tonno as they are a BVI corporation that owns a Cayman Islands flagged vessel. While this factor points to the application of BVI law, it should be given no weight due to the allegiance of the ship owner being a mere corporate formality.

### 5. Place of contract

As *Lauritzen* held, where the contract is physically signed is "fortuitous" as a seaman "takes his employment, like his fun, where he finds it", which is exactly the situation he Plaintiff finds himself in. *Lauritzen*, 345 U.S. at 588. Plaintiff only signed the contract in France because he was in France at the time that Tonno was searching for crew. However, it is very likely that the contract itself was actually written in Florida by Tonno's yacht

---

[3] Fifth Circuit case law before 1981 is binding upon the Eleventh Circuit. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

managers, Fraser Yachts. *See* **Exhibit A**, at 5-8. As the agents and managers of the vessel, Fraser Yachts is tasked with creating, negotiating and maintaining all of the documents and contracts in their Florida headquarters. It was just fortuitous that Plaintiff happened to be hired in France, as that was where he found the job offer. Either way, the Court held that when it comes to tort claims, such as tort-like maintenance and cure, "[w]e do not think the place of contract is a substantial influence in the choice between competing laws" so this factor should be given little to no weight. *Lauritzen*, 345 U.S. at 589. Plaintiff argues that since Fraser Yachts created the contract, this factor points to the application of US law.

### 6. Inaccessibility of foreign forum

Defendant Tonno misinterprets this factor and the *Lauritzen* analysis of applying to dismissal of the suit in favor of another forum. The Court made it clear that the *Lauritzen* analysis simply decides *which law to apply* within a US court. *See Id. at* 589-90. The inaccessibility of a foreign forum factor is not important to either party if this Court accepts jurisdiction as it would simply be applying a different law within this Court. However, it is not clear which of the four countries law would apply to this case for example the law of the flag points to Cayman Islands, the Plaintiff's citizenship points to US law, place of contract points to France but the Defendant's citizenship points to BVI.

### 7. Law of the forum

This factor clearly points to US Law as this chosen forum is in the United States.

### 8. The shipowner's base of operations

This factor can arguably point to the USA as well because Tonno's agent, Fraser Yachts based out of Florida, controls the day-to-day operations of the vessel. Courts have held that this factor is a question of fact based on weighing various factors like "the location

of the shipowner's home office, the location where management and day-to-day operating decisions are made, the country where the ship most frequently calls or generates the most income, and the location of the ship's home port." *Gazis v. John S. Latsis, Inc.*, 729 F. Supp. 979, 984 (S.D.N.Y. 1990) (summarizing the factors expressed in *Sigalas v. Lido Maritime, Inc.*, 776 F.2d 1512, 1518 (11th Cir. 1985)). Tonno's official home office address is a PO Box in the BVI, at P.O. Box 958, Road Town, Tortola, VG1110, British Virgin Islands. *See* **Exhibit I**. Management decisions are made in Florida through the vessel's management company, Fraser Yachts and the ship's home port is France. *See* **Exhibit A**. Fraser Yachts controls the management of the vessel, crew, and insurance out of its headquarters in Florida. Again, the three countries are of equal weight in this factor as the "base of operations" could be considered either USA, France or the BVI. In Plaintiff's view, the day-to-day management of the ship should be the overriding factor and thus the Court should hold that the base of operations is Florida and thus US law applies in this factor.

  f. **Traditional Forum Non Conveniens Factors**

While Plaintiff argues that this Court has jurisdiction and the only debate should be over which law this Court applies, Plaintiff will nonetheless analyze the traditional forum non conveniens factors as argued for dismissal of the case from this forum.

  1. **Adequate Alternative Forum**

Defendant has failed to show which alternative forum is adequate for Plaintiff's claims. They have shown that multiple other forums may exist, such as France, Cayman Islands and BVI, however Tonno has failed to show which of those three should be the chosen alternative forum. For example, if this case is dismissed and the Plaintiff initiates a lawsuit in the BVI, there is nothing stopping Defendant from once again arguing that while

jurisdiction exists, the case should still be dismissed as it can better be litigated in France or the Cayman Islands. Just as France might be an adequate forum, so may be the BVI or Cayman Islands, or even the USA, should the action be initiated in those other forums.

### 2. Private Interests

The private interest factors work heavily against the Defendant as mentioned above. Access to proof would be easier in Florida as all of Plaintiff's medical records and the relevant witnesses, the treating physicians are from Florida. Furthermore, because Tonno's management agent Fraser Yachts is based out of Florida, all of the corporate documents, Plaintiff's employment records and contract will be stored with them in Florida. Furthermore, the vessel's insurance is with Chubb, who is also an American corporation and so all of the relevant insurance documents are easily gathered within the US.

### 3. Public Interests

The Court has held that "[r]elevant public interest factors include the sovereigns' interests in deciding the dispute, the administrative burdens posed by trial, and the need to apply foreign law". *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1284 (11th Cir. 2001). There is a very strong interest in US courts resolving a dispute by the Plaintiff, a US citizen seaman. As a ward of the Court, and a US citizen, there is a "legitimate interest that its nationals and permanent inhabitants be not maimed or disabled from self-support". *Lauritzen*, 345 U.S. at 586. The administrative burden would be the same in any court if this goes to trial so this factor has very little weight in the analysis. There is no need to apply foreign law in this case as analyzed above, US law should apply more as the Plaintiff is a US citizen, a seaman whose injuries were aggravated and increased in Florida by Tonno's arbitrary and capricious actions by willfully failing to pay maintenance and cure. Therefore,

Plaintiff argues that dismissal for forum non conveniens is inappropriate and that this Court has jurisdiction.

### g. Plaintiff has stated a claim for relief as mentioned above

Plaintiff has explained above that all of its counts are properly alleged and that the Court has personal jurisdiction based on the injury occurring in Florida through Defendant's arbitrary and capricious actions. Furthermore, subject matter jurisdiction is proper through diversity and admiralty law. Plaintiff is a US citizen seaman and admiralty law applies as he is a ward of the court and Defendant has wrongfully terminated his employment and withheld wages, which gives rise to admiralty jurisdiction. *See The August Belmont*, 153 F. 639, 641 (S.D. Ga. 1907).

WHEREFORE, Plaintiff respectfully requests that the Court deny the Defendant's Motion to dismiss for lack of jurisdiction and for forum non conveniens and order that the Court has personal and subject matter jurisdiction and that US law applies under the *Lauritzen* analysis and grant any other relief that the Court finds appropriate.

Dated: May 15, 2020                            Respectfully Submitted,

**MOORE & COMPANY, P.A.**
*Counsel for Plaintiff*
255 Aragon Avenue, 3rd Floor
Coral Gables, Florida 33134
Telephone: (786) 221-0600
Facsimile:  (786) 221-0601
michael@moore-and-co.com
kvartak@moore-and-co.com

s/Kavan Vartak
Kavan Vartak, Esq
Florida Bar No. 1017058
Michael T. Moore, Esq.
Florida Bar No. 207845

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 15, 2020, this document was served on counsel for all parties of record as it was electronically with the Clerk of the Court using the Court's electronic filing system, CM/ECF.

                                              s/Kavan Vartak
                                              Kavan Vartak